## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Moises Ibarra-González,**<br>    Petitioner,<br><br>v.<br><br>**Ingrid Morales, Warden,**<br>**Institución Ponce Adultos, et al.,**<br>    Respondents. | **Civil No. 23-1575 (CVR)**<br>(28 U.S.C. §2254) |

### REPORT AND RECOMMENDATION

Respondents Ingrid Morales, Warden of the Ponce Adult Institution, and former Attorney General of Puerto Rico Domingo Emanuelli-Hernández (collectively, the "Respondents") have moved to dismiss Petitioner Moises Ibarra-González's ("Petitioner" or "Mr. Ibarra-González") *Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254* (the "Amended Petition"). *See* Docket No. 31. For the reasons set forth below, the undersigned recommends dismissal of the Amended Petition. First, the Amended Petition should either be dismissed or transferred to the Court of Appeals for the First Circuit under 28 U.S.C. §§ 2244(b)(3)(A) and 1631, because the Court concludes that the 2016 Judgment does not constitute an intervening judgment under the *Magwood* line of cases. *United States v. Bucci*, 809 F.3d 23, 26 (1st Cir. 2015) (citing *Trenkler v. United State*s, 536 F.3d 85, 96 (1st Cir. 2008)). Second, because the 2016 Judgment does not qualify as an intervening judgment, the one-year statute of limitations was not reset by its entry; accordingly, the limitations period has expired.

### I.    RELEVANT FACTS AND PROCEDURAL BACKGROUND[1]

In the afternoon of August 17, 2002, a man later identified as Wilson Bobe-Muñiz, was gunned down in broad daylight. *See* Docket No. 31 at 1. He was shot near

---

[1] The Relevant Facts and Procedural Background was taken largely from the Petitioner's Amended Petition. *See* Docket No. 31.

the entrance to the Columbus Landing subsidized housing complex located in Mayagüez, Puerto Rico. *Id.* There were no third-party eye witnesses to the shooting other than the perpetrator and the victim. *Id.*

Following this incident, Mr. Ibarra-González was charged with killing Mr. Bobe-Muñiz using a firearm. *Id.* at 2. The charges against him were filed in the Court of First Instance–Mayagüez Part. *Id.* The charging documents alleged three offenses under Puerto Rico law: Murder in the First Degree (Art. 83, P.R. Penal Code (1974)), Carrying and Using a Firearm Unlawfully (Art. 5.04, P.R. Weapons Act (2000) (repealed)), and Possessing a Firearm Without a License (Art. 5.04, P.R. Weapons Act (2000) (repealed)). Criminal Nos. IVI2002G0053; LA2002G0307-08. *Id.*

The Court of First Instance appointed counsel ("trial counsel") to represent Mr. Ibarra-González. Eventually, Mr. Ibarra-González waived his right to a jury trial and requested a bench trial. *Id.* Ahead of the bench trial, Mr. Ibarra-González purportedly stressed to his trial counsel that, at the time of Mr. Bobe-Muñiz's shooting, he was getting his hair cut at a barber shop located a considerable distance away from the crime scene. *Id.* Mr. Ibarra-González also allegedly further informed trial counsel that other individuals were present in the barber shop and they could confirm that Mr. Ibarra-González was indeed present at the barber shop at the time of the incident. *Id.* Mr. Ibarra-González claims to have provided his trial counsel with the names of those potential witnesses. *Id.*

As Mr. Ibarra-González would later aver in these proceedings that, notwithstanding his colorable alibi, trial counsel failed to investigate it as a defense. *Id.* He maintained that trial counsel failed to visit the barber shop and never attempted to interview any of the individuals present at the barber shop at the time of the shooting. *Id.* And lastly, he claimed that trial counsel failed to procure any statements, sworn or otherwise, from any of the witnesses that Mr. Ibarra-González had identified. *Id.*

For these reasons, before the start of his bench trial, Mr. Ibarra-González moved the Court of First Instance to appoint him new trial counsel. *Id.* at 3.

Mr. Ibarra-González noted that he disagreed with the work that trial counsel had performed up to that point and that he lacked the financial resources necessary to retain private counsel. *Id.* The Court of First Instance denied his request for new counsel on the ground that his appointed trial counsel had participated in another criminal trial recently and that, in the judge's view, he had performed well. *Id.*

A bench trial was held in January 2003. The prosecution's case-in-chief consisted of the testimony of multiple police officers, a state pathologist, and photographs of the crime scene. *Id.* The prosecution purportedly marshaled no direct evidence of Mr. Ibarra-González's involvement in the death of Mr. Bobe-Muñiz. *Id.*

According to Puerto Rico Police Officer Luis A. Marrero Vázquez, at around 5:00PM on August 17, 2002, he and fellow officer José Crespo, were driving by Building 1 of the Columbus Landing public housing project when they noticed a man lying on the ground. *Id.* Standing nearby, a second man told the officers that the victim had a bullet wound. *Id.* The officers approached the duo, exited their cruiser, and observed a bullet wound below the man's sternum but no exit wound. *Id.* This second individual was not called as a trial witness either by the defense or the prosecution. *Id.*

When asked to state his name, the wounded man identified himself as Wilson Bobe-Muñiz. *Id.* at 4. Officer Marrero then asked Mr. Bobe-Muñiz if he knew who shot him. *Id.* Mr. Bobe-Muñiz answered affirmatively saying it was Moisés Ibarra-González. *Id.* According to Officer Marrero's account, when he asked Mr. Bobe-Muñiz where police could locate the shooter, the victim replied that Mr. Ibarra-González lived in Building 37, apartment 402 of Columbus Landing and that he drove a green Ford Aerostar. And, when asked for a description of Mr. Ibarra-González, Mr. Bobe-Muñiz allegedly stated that he was "dark and short." *Id.*

Emergency medical personnel arrived at the scene roughly one minute after Officer Marrero. *Id.* At trial, the prosecution did not call any EMS personnel to testify. Shortly after EMS personnel arrived, law enforcement officers went to the address that Mr. Bobe-Muñiz had provided as Mr. Ibarra-González's residence. *Id.*

*Moises Ibarra-González v. Ingrid Morales, Warden, Inst. Ponce Adultos*
Report & Recommendation
Civ. No. 23-1575 (CVR)

According to Mr. Ibarra-González, only one agent—Officer José Crespo—made his way to his residence. And, when Officer Crespo arrived there, Mr. Ibarra-González was outside his apartment building next to a neighbor. *Id.* Officer Crespo walked up to the men and handcuffed the neighbor. *Id.* The neighbor was then asked his name, and when it became clear that he was not Mr. Ibarra-González, Officer Crespo stated, "you're not the one." *Id.* The neighbor was then uncuffed and Officer Crespo arrested Mr. Ibarra-González. *Id.*

At trial, the prosecution elicited testimony indicating that, when officers arrived at the address provided, Mr. Ibarra-González was standing a few feet from a green Ford Aerostar. *Id.* at 5. Law enforcement also testified that Mr. Ibarra-González was immediately recognized as Moisés Ibarra because an officer purportedly "identified" him as the suspected owner of a drug point and that Mr. Ibarra-González "answered to the name Moisés." *Id.* Trial counsel did not subpoena or call as a witness the neighbor who was mistakenly arrested. The trial court, therefore, never heard this account. *Id.*

Furthermore, trial counsel did not give notice, nor present any evidence, of an alibi defense. Trial counsel neither subpoenaed nor called as a witness any of the individuals who could substantiate what Mr. Ibarra-González had steadfastly maintained: that at the time of the shooting, he was getting his hair cut at a barber shop located a considerable distance from Columbus Landing. *Id.*

Crediting law enforcement's testimony, the trial court found Mr. Ibarra-González guilty of the charged Weapons Act violations and guilty, as well, of Second Degree Murder, a lesser included of the First Degree Murder count. *Id.*

At the time of Mr. Ibarra-González's conviction, Puerto Rico law punished Second Degree Murder with a fixed term of eighteen years in prison. *See* Art. 84, P.R. Penal Code (1974). Where certain aggravating or mitigating factors were met, the law provided for a prison term of either thirty years or twelve years, respectively. *Id.* But, in Mr. Ibarra-González's case, a recidivism provision mandated an enhanced sentence of life without the possibility of parole on the Second Degree Murder count. *See* Art.

63, P.R. Penal Code (1974). *Id.* at 5-6. By operation of law, the life sentence was imposed to run consecutive to two concurrent twenty-year terms of incarceration for each of the Weapons Act violations (the "2003 Judgment"). *Id.* at 6.

Mr. Ibarra-González contended that after his conviction, trial counsel did not consult with him about the pros and cons of taking an appeal as discussed in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). Nor did trial counsel perfect an appeal within the time prescribed by law. *See* P.R. Laws Ann. tit. 34A, App. II, R. 194 (appeals generally due 30 days after sentence is pronounced). *Id.* This was despite Mr. Ibarra-González's contention that he expressly told trial counsel that he wished to seek appellate review of at least one aspect of the judgment of conviction. *Id.*

For the next few years, Mr. Ibarra-González wandered the procedural maze that is post-conviction review. In 2008, he landed in United States District Court for the District of Puerto Rico after filing a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (the "First 2254 Petition"). *Id.*

### A. The First 2254 Petition

The First 2254 Petition was given Case Number 08-cv-1542 and was assigned to the Honorable Daniel R. Domínguez (Ret.). The First 2254 Petition asserted all of the claims of ineffective assistance of trial counsel and appellate counsel described above. *Id.*

Years of litigation saw an appeal to the First Circuit and a remand, though the First 2254 Petition was ultimately dismissed for being time barred. *See* Opinion and Order, No. 08-cv-1542-DRD, ECF No. 72 at 7-8 (D.P.R. Sept. 22, 2012). According to the Judgment in the First 2254 Petition, the dismissal was entered "with prejudice." *See* Judgment, No. 08-cv-1542-DRD, ECF No. 73 at 1 (D.P.R. Sept. 22, 2012).[2]

---

[2] The docket entry order for Docket No. 73 erroneously indicates that the dismissal was "without prejudice." Docket No. 72 and the text of the Judgment at Docket No. 73 both indicate that the dismissal was "with" prejudice.

*Moises Ibarra-González v. Ingrid Morales, Warden, Inst. Ponce Adultos*
Report & Recommendation
Civ. No. 23-1575 (CVR)

### B. The Second 2254 Petition

On May 4, 2015, Mr. Ibarra-González filed a Request for Administrative Remedy ("Request for Administrative Remedy") from the Division of Administrative Remedies ("DAR") of the Puerto Rico Department of Corrections and Rehabilitation ("Corrections"). *Ibarra González v. Department of Corrections and Rehabilitation*, 2015 WL 10091519 (PR Court of Appeals Dec. 18, 2015) *see* Docket No. 43-3 at 1. In his Request for Administrative Remedy, he asked to be credited with bonuses for study and work that he had performed during his incarceration.

On June 3, 2015, the Secretary of the Department of Corrections and Rehabilitation signed a new version of the Internal Bonus Regulations. The new version contained some fundamental changes including the fact that any inmate sentenced to serve a sentence of 99 years for murder in the first degree would be entitled to an additional bonus for study and work in accordance with Reorganization Plan No. 2 of November 21, 2011. Inmates who serve their sentence in natural time would also be entitled to a bonus for study and work. Corrections therefore ordered that Mr. Ibarra-González's sentence be evaluated in accordance with the new guidelines contemplated in the Internal Bonus Regulations dated June 3, 2015.

After receiving some initial pushback on his request, on July 22, 2015, Corrections issued a Resolution (the "Resolution") wherein it recognized Mr. Ibarra-González's right under Reorganization Plan No. 2-2011 to be credited with bonuses for study and work. Docket 43-3 at 5. In accordance with the applicable regulations, Corrections had until August 21, 2015, the date on which the deadline for requesting judicial review expired, to modify the appealed decision, either by reconsideration at the request of a party or *sua sponte. Id.* at 43-3 at 5.

Notwithstanding the deadline to seek judicial review, on August 31, 2015, Corrections issued an Amended Resolution (the "Amended Resolution"). In the Amended Resolution, Corrections took an apparent 180-degree turn and vacated the previous Resolution in its entirety. Accordingly, the vacation of the Resolution had

*Moises Ibarra-González v. Ingrid Morales, Warden, Inst. Ponce Adultos*
Report & Recommendation
Civ. No. 23-1575 (CVR)

the effect of denying Mr. Ibarra-González the right to bonuses for study and work that the agency itself had previously recognized.

On appeal before the Puerto Rico Court of Appeals, 2015 WL 10091519, *1 (Case No. MA-876-15, KLRA201501123, Dec. 18, 2015), the court held as follows:

> [A] careful analysis of both resolutions reveals that far from what Corrections claims, the Amended Resolution is not a *nunc pro tunc* amendment to the original Resolution. Under no circumstances are we dealing with a formal error, a typographical error, or simple oversight. Rather, the Amended Resolution goes to the substance of the Resolution and constitutes a radical modification of the Resolution, which undoubtedly required the exercise of discretion by the respondent agency.
>
> We must add that the *Request for Administrative Remedies,* under no circumstances, constitutes a request for reconsideration of the *Resolution* dated July 22, 2015. A careful reading of it reveals that in that document the appellant does not request that the *Resolution* granting him the requested right to a bonus be annulled, which would be absurd, but expresses his concern because Corrections officials had informed him that they would not comply with it. In any event, said *Request for Administrative Remedy* would constitute a new administrative procedure. This is how the respondent seemed to have understood it when granting it a new alphanumeric classification MA-1681–15, different from the *Resolution* dated July 22, 2015 MA–876–15, which merited processing it *de novo,* in accordance with the procedure established in the Regulations for Responding to Requests for Administrative Remedies Filed by Members of the Correctional Population, Regulation No. 8522 dated September 26, 2014.
>
> For the reasons set forth above, we conclude that Corrections did not have jurisdiction to issue the *Amended Resolution.*

*Id.* at *7-*8.

Having found that Corrections was without jurisdiction to issue the Amended Resolution, the Court of Appeals nevertheless highlighted that that decision alone

*Moises Ibarra-González v. Ingrid Morales, Warden, Inst. Ponce Adultos*
Report & Recommendation
Civ. No. 23-1575 (CVR)

did not resolve the entire matter pending before it. Instead, the Court of Appeals noted that it was imperative to consider the position of the respondent, namely Corrections, in understanding the full extent of the issue. For example, for Corrections, the particular situation for Mr. Ibarra-González appeared to create "an impasse." This is so because,

> the principle of favorability contained in Section 308 of the Criminal Code of 2004 does not apply to [Mr. Ibarra-González], since it does not extend to criminal conduct that incurred before the Code entered into effect. Nor does the principle of favorability of Section 303 of the Criminal Code of 2012 apply to him, since it provides that conduct prior to said criminal law will be governed by the laws in force at the time of the criminal incident.

*Id.* at *8.

Recognizing the apparent impasse, the Court of Appeals noted that Corrections had no objection to inmates, like Mr. Ibarra-González, receiving a work-study bonus in light of the then state of the law relating to bonuses. The problem, however, was that Mr. Ibarra-González had received a sentence of life imprisonment, *without any term of duration.* (Emphasis added). That is to say that his sentence had no maximum or minimum term as it was a sentence that *permanently separated him from society.* As such, it was impossible to calculate reductions or discounts from his sentence for study or work bonuses.

Moreover, given the well-known principle that a criminal sentence can only be imposed by a court of law, Corrections believed itself powerless to credit the study and work bonus without an appropriate order from the court as doing so would have the effect of modifying Mr. Ibarra-González's sentence, a sentence that had been legally and validly imposed under the Puerto Rico Criminal Code of 1974. Corrections therefore requested that the Court of Appeals "resolve the controversy in accordance with the law." *Id.* at 9. In other words, Corrections was asking the court to do that which it could not do itself–modify Mr. Ibarra's sentence to allow for bonus credits for study and work consistent with the then existing state of the law.

*Moises Ibarra-González v. Ingrid Morales, Warden, Inst. Ponce Adultos*
Report & Recommendation
Civ. No. 23-1575 (CVR)

In response to that petition, and without providing any real explanation for its decision, the Court of Appeals held as follows:

> After carefully analyzing the arguments set forth, we order the remand of the present case before the Court of First Instance to proceed to resentence Mr. Moisés Ibarra-González, inmate number 6-66032, for the offenses committed in cases IVI2002G0053, ILA2002G0307, and ILA2002G0308. *This new sentence will be implemented in accordance with the determinate sentencing system implemented under Act No. 100 enacted on July 4 1974.*
>
> Once Mr. Ibarra has been resentenced, Corrections will refer the matter to the Supervisor of the Socio-penal Unit so that all the evidence may be compiled from the social and criminal case record that confirms that the appellant carried out work or study during his confinement. Once the evidence has been obtained, it must be presented to the Classification and Treatment Committee so that, *if [he] qualifies, the appropriate bonus be granted to him.*

Docket No. 43-3. (Emphasis added).

On remand, consistent with the Court of Appeals' decision, the trial court resentenced Mr. Ibarra-González under the determinate sentencing system.[3] His life sentence without the possibility of parole for Second-Degree Murder was converted to a fixed term of 99 years' incarceration.[4] His sentences corresponding to the two Weapons Act counts were left undisturbed.

On November 15, 2023, Mr. Ibarra-González filed a motion for leave to proceed *in forma pauperis* and a habeas corpus petition under 28 U.S.C. § 2254 (Docket Nos. 1-3). On November 17, 2023, the Court granted Petitioner's motion for leave to proceed *in forma pauperis* and appointed the Federal Public Defender ("FPD") to represent him to assess the merits of his claims and to inform the Court how this matter should proceed. Docket No. 6. After several procedural events, on June 20,

---

[3] Defendant was resentenced under the determinate sentencing system on April 7, 2016.

[4] *See Pueblo v. Ibarra González*, No. IVI2002G0053, 2016 WL 7033749, at *1 (P.R. Cir. Oct. 24, 2016).

*Moises Ibarra-González v. Ingrid Morales, Warden, Inst. Ponce Adultos*
Report & Recommendation
Civ. No. 23-1575 (CVR)

2024, Mr. Ibarra-González, through the FPD, filed *Petitioner's Memorandum of Law and Motion in Compliance with Court Order*. Docket No. 25 (the "Memorandum"). On June 21, 2024, the Court issued an Order stating that it was "not in a position at this juncture to make a ruling on the jurisdictional question as to whether Mr. Ibarra-González's Petition is a second or successive petition with the limited information available and without having Defendant's [sic] [Respondents'] position as to this jurisdictional question." Docket No. 26. The Court allowed Mr. Ibarra-González to file an amended petition and stated that "[t]he jurisdictional question is to be addressed by [Respondents] in the responsive pleading to the Amended Habeas Corpus Petition, if deemed appropriate." *Id.*

On August 19, 2024, Mr. Ibarra-González filed an *Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254*. Docket No. 31. In his Amended Petition, which is the second-in-time habeas petition filed (hereinafter to be referred to as the "Second 2254 Petition" or the "Amended Petition"), Mr. Ibarra-González raises the *same* ineffective assistance of counsel arguments that he had raised previously in the First 2254 Petition, namely that trial and appellate counsel rendered ineffective assistance by 1) failing to investigate and present an alibi defense, 2) failing to perfect an appeal within the thirty-day jurisdictional window, and 3) failing to adequately consult with Mr. Ibarra-González regarding his right to appeal consistent with *Roe v. Flores-Ortega*, 528 U.S. 259 (2000).

### C. Respondents' Motion to Dismiss the Second 2254 Petition

On November 22, 2024, the Respondents filed a *Motion to Dismiss Mr. Ibarra-González's Second Petition under 28 U.S.C. § 2254* ("Motion to Dismiss"). In their Motion to Dismiss, the Respondents advanced two principal arguments in support of dismissal.

First, they contend that before a second or successive habeas petition may be filed in federal court, "the applicant [must] move in the appropriate court of appeals for an order authorizing the district court to consider the application." *See Perry v. Alves*, 2024 WL 3359415, at *2 (D. Mass. July 9, 2024) (citing 28 U.S.C.

*Moises Ibarra-González v. Ingrid Morales, Warden, Inst. Ponce Adultos*
Report & Recommendation
Civ. No. 23-1575 (CVR)

§ 2244(b)(3)(A)). And because the present case involves a second or successive petition within the meaning of § 2244(b), and Mr. Ibarra-González has not obtained the requisite authorization from the United States Court of Appeals for the First Circuit, this Court is without jurisdiction to hear this matter and it must either dismiss the Second 2254 Petition outright or transfer it to the First Circuit to obtain the necessary authorization. *See id.* (citing *Bucci*, 809 F.3d at 26).

Second, Respondents assert that the Second § 2254 Petition is time-barred, as it was filed outside the one-year statute of limitations governing federal habeas claims under the Antiterrorism and Effective Death Penalty Act (AEDPA).[5]

Petitioner, however, disputes the applicability of the "second or successive" bar. While he does acknowledge that his Amended Petition is indeed a petition filed second-in-time, he argues that it should not be deemed a "second or successive" petition for purposes of § 2244(b). More specifically, Petitioner contends that, as in *Magwood v. Patterson*, an intervening judgment was entered between his first and second habeas petitions thereby preventing the latter from being categorized as a second or successive petition requiring prior authorization from the Court of Appeals.

While this matter appears to be a case of first impression in this Circuit, for the reasons that follow, the undersigned finds that the Second 2254 Petition does constitute a second or successive petition and therefore the Court is without jurisdiction to resolve this matter. Dismissal or referral to the First Circuit is therefore required. Furthermore, based on a finding that the Second 2254 Petition constitutes a second or successive habeas petition filed by the Petitioner, it is time barred under the applicable one-year statute of limitations. The Court explains.

---

[5] Pub. Law No. 104-132, 110 Stat. 1214 ("AEDPA"), codified in relevant part at 28 U.S.C. §2244.

## II.    LEGAL DISCUSSION

### A. Legal Standard Applicable to Motions to Dismiss

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of Trial Court of Mass.*, 83 F. Supp. 2d 204, 208 (D. Mass. 2000). Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). Although a court must accept as true all factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

### B. Second or Successive § 2254 Petitions Under the Antiterrorism and Effective Death Penalty Act of 1996

On April 24, 1996, President William J. Clinton signed into law the "Antiterrorism and Effective Death Penalty Act of 1996," also known as the "AEDPA." Title I of AEDPA, entitled "Habeas Corpus Reform," contains many far reaching provisions—both codifications of preexisting case law and entirely new habeas corpus doctrines. 2 Ira P. Robbins, *Habeas Corpus Checklists* § 17:1, at 1 (2023 ed.). As part of the habeas corpus reforms, Congress enacted what is colloquially known as the "gatekeeping provision" of the AEDPA, 28 U.S.C. § 2244(b), which "set[] stringent limits on second or successive habeas applications." *Perry v. Alves*, No. 23-cv-13028 JEK, 2024 WL 3359415 (D. Mass July 9, 2024) (citing *Banister v. Davis*, 590 U.S. 504, 507 (2020)). Under AEDPA, "a state prisoner always gets one chance to bring a federal habeas challenge to his conviction," but "the road gets rockier" after that. *Id.* quoting *Banister*, 590 U.S. at 509. In particular, before a second or successive habeas petition may be filed in federal district court, "the applicant [must] move in the

*Moises Ibarra-González v. Ingrid Morales, Warden, Inst. Ponce Adultos*
Report & Recommendation
Civ. No. 23-1575 (CVR)

___

appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). The petitioner must, in other words, "obtain leave from the court of appeals before filing a second habeas petition in the district court." *Perry*, at *1 (quoting *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

"When faced with a second or successive [habeas] petition that has not been authorized by the court of appeals, a district court must either dismiss the petition or transfer it to the court of appeals." *Bucci*, 809 F.3d at 26. This is so because "AEDPA's prior approval provision allocates subject-matter jurisdiction to the court of appeals by stripping the district court of jurisdiction over a second or successive habeas petition unless and until the court of appeals has decreed that it may go forward." *Pratt v. United States*, 129 F.3d 54, 57 (1st Cir. 1997); *see also Gautier v. Wall*, 620 F.3d 58, 61 (1st Cir. 2010).

In this case, there is no debate that Mr. Ibarra-González's Second § 2254 Petition is a second-in-time petition. However, being second-in-time does not necessarily mean the petition is "second or successive" under AEDPA and therefore subject to the strict requirements of § 2244(b)(3)(A).

The Supreme Court's 2010 opinion in *Magwood v. Patterson*, supra, addressed the meaning of the phrase "second or successive," which is the triggering condition for these more stringent statutory requirements. *In re Edwards*, 98 F.4th 425, 431 (3d. Cir. 2024) (citing *Magwood*, *at 430-31*). In *Magwood*, the petitioner was convicted of aggravated murder and sentenced to death under Alabama state law. *Id.* (citing *Magwood*, at 324). Shortly before his scheduled execution, Magwood filed a federal habeas petition challenging his conviction and sentence. *Magwood*, at 326. The District Court rejected Magwood's claims attacking his *conviction* but agreed with Magwood's claims attacking his *sentence* and issued a conditional writ. *Id.* (Emphasis added). In response, the Alabama court held a new sentencing proceeding and, in 1986, sentenced Magwood to death for the second time. *Id.* Magwood then filed another federal habeas petition challenging his 1986 death sentence. *Id.* at 328. The Supreme Court "granted certiorari to determine whether Magwood's application

Page 13

*Moises Ibarra-González v. Ingrid Morales, Warden, Inst. Ponce Adultos*
Report & Recommendation
Civ. No. 23-1575 (CVR)

challenging his 1986 death sentence, imposed as part of resentencing in response to a conditional writ from the District Court, [was] subject to the constraints that § 2244(b) imposes on the review of 'second or successive' habeas applications." *Id.* at 330 (citing *Magwood v. Culliver*, 558 U.S. 1023 (2009)). The Supreme Court explained that the phrase "second or successive" is a "term of art" that "does not simply 'refe[r] to all § 2254 applications filed second or successively in time.'" *Id.* at 332 ((alteration in original) ((quoting *Slack v. McDaniel*, 529 U.S. 473, 486 (2000)) (quoting *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007)) (collecting cases)). Rather, "the phrase 'second or successive' must be interpreted with respect to the judgment challenged," *id.* at 333; and when "there is a 'new judgment intervening between the two habeas petitions,' an application challenging the resulting new judgment is not 'second or successive' at all." *Id.* at 341–42 (quoting *Burton v. Stewart*, 549 U.S. 147, 156 (2007)). The rationale behind such concept is that "[a]n error made a second time is still a new error." *Magwood*, at 339. As such, a petition challenging an intervening judgment is not second or successive. *Id.* at 341-42. This is especially true where, as the Court said, "the state court conducted a full resentencing and reviewed the aggravating evidence afresh." *Id.* at 339. Accordingly, the Court held that "Magwood's first application challenging his *new* sentence under the 1986 judgment [was] not 'second or successive' under § 2244(b)." *Id.* at 342.

The crux of Petitioner's argument in this case is that *any* modification to his sentence—*no matter how minor*—resets the habeas clock and permits him to challenge not only the revised sentence but also his underlying conviction. Petitioner finds support for this position in the Supreme Court's decision in *Deal v. United States*, 508 U.S. 129 (1993). In *Deal*, the Court held that that "[a] judgment of conviction includes both the adjudication of guilt and the sentence." *Id.* at 132. Therefore, based on that premise, Petitioner contends that when a habeas petition results in an amended judgment, any subsequent petition is not considered successive, regardless of whether it challenges the conviction, the sentence, or both. *Johnson v. United States,* 623 F.3d 41, 46 (2d. Cir. 2010).

*Moises Ibarra-González v. Ingrid Morales, Warden, Inst. Ponce Adultos*
Report & Recommendation
Civ. No. 23-1575 (CVR)

_____

To bolster his position, Petitioner relies on authority from other circuits, beginning with *Crangle v. Kelly*, 838 F.3d 673, 677–78 (6th Cir. 2016). In *Crangle*, the Sixth Circuit observed that, in *Magwood*, the Supreme Court expressly declined to decide whether § 2244(b) permits a habeas petitioner to challenge not only a new sentence, but also the original, undisturbed conviction. *Id.* at 342. That open question, which also coincides with the question presented here, was subsequently addressed in *King v. Morgan*, 807 F.3d 154 (6th Cir. 2015). There, the Sixth Circuit held that "a habeas petitioner, after a full resentencing and the new judgment that goes with it, may challenge his undisturbed conviction without triggering the 'second or successive' requirements." *Id.* at 156. As the court explained, consistent with longstanding practice, "a judgment in a criminal case includes both the adjudication of guilt and the sentence." *Id.* at 157–58 (quoting *Deal v. United States*, supra). Thus, "even when the only change in the state-court proceeding relates to the sentence, the court must issue a new judgment that both imposes the modified sentence and reinstates the conviction." *Id.* at 158. Because "the existence of a new judgment is dispositive in resetting the 'second or successive' count, . . . the existence of a new judgment permits a new application to attack the sentence, the conviction, or both." *Id.* (emphasis added) (citations omitted).

Similarly, in *Wentzell v. Neven*, 674 F.3d 1124, 1126-27 (9th Cir. 2012), the Ninth Circuit held that Wentzell's second-in-time petition was not "second or successive" under the AEDPA because it was the first petition to challenge the amended judgment of conviction. The court explained that it "treat[s] the judgment of conviction as one unit, rather than separately considering the Judgment's components, i.e., treating the conviction and sentence for each count separately. *Id.* at 1127.

In *Insignares v. Secretary, Florida Department of Corrections*, 755 F.3d 1273 (11th Cir. 2014), the Eleventh Circuit addressed whether a habeas petition should be deemed "second or successive" under AEDPA. Insignares's first federal habeas petition was adjudicated in 2008. The following year, the state trial court granted a

*Moises Ibarra-González v. Ingrid Morales, Warden, Inst. Ponce Adultos*
Report & Recommendation
Civ. No. 23-1575 (CVR)

motion to reduce his mandatory-minimum sentence from twenty years to ten, while leaving in place his total term of imprisonment of twenty-seven years. The court held that the 2009 resentencing constituted a new judgment, such that Insignares's subsequent federal habeas petition, filed in 2011, constituted his first challenge to the 2009 judgment and therefore was not "second or successive" under AEDPA.

And finally, Petitioner relies on the Second Circuit's decision in *Johnson v. United States*, 623 F.3d 41 (2d Cir. 2010). There, the court held that "where a first habeas petition results in an amended judgment, a subsequent petition is not successive," even if it raises claims that could have been presented in the earlier petition or that effectively challenge an unaltered component of the judgment. *Id.* at 46. The court reasoned that, consistent with *Magwood v. Patterson*, supra, successive petitions must be evaluated with respect to the judgment as a whole, rather than specific provisions of the judgment. *Id.* at 130. On that basis, the Second Circuit concluded that Johnson's petition was not second or successive, and thus did not require prior authorization from the court of appeals.

Notwithstanding the foregoing cases—which collectively follow the general rule that a modification to a sentence, however minor, creates a new intervening judgment and thus prevents a subsequent habeas petition from being deemed second or successive under § 2244(b)(3)—the Respondents point to another line of authority grounded in different Supreme Court precedent, namely *Dillon v. United States*, 560 U.S. 817 (2010), to argue for a contrary result. In *Dillon*, the Court recognized a fundamental difference between sentencing and sentence-modification proceedings. *Id.* at 830.

The Court commenced its analysis by recognizing that, generally, a federal court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). This proscription is pierced, however, for cases in which a defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" by a narrow exception created by Congress. *See* 18 U.S.C. § 3582(c)(2). In those limited circumstances,

*Moises Ibarra-González v. Ingrid Morales, Warden, Inst. Ponce Adultos*
Report & Recommendation
Civ. No. 23-1575 (CVR)

§ 3582(c)(2) authorizes a court to reduce the term of imprisonment, provided that "such a reduction is consistent with" the applicable policy statements issued by the Commission. *Id.* at 819. When the Commission makes a Guidelines amendment retroactive, § 3582(c)(2) permits a district court to reduce an otherwise final sentence based on the amended provision. Important for our analysis, however, is the fact that in so finding, the Court indicated that such a modification proceeding does *not* impose a new sentence in the ordinary sense. *Id.* at 821. (Emphasis added). Although there is "no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments, . . . § 3582(c)(2) represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines." *Id.* at 828.

In sum, and in stark contrast to the holding in *Deal*, *Dillon* recognized that there is a difference between sentencing modification proceedings and traditional sentencing hearings. It is this difference that the Respondents emphasize in this case. The most poignant example of where this concept comes into play is in the multitude of cases dealing with sentence reductions under the First Step Act.

In 2018, Congress passed the First Step Act of 2018 (the "First Step Act"), which, in part, allowed courts to resentence people with crack cocaine convictions as if sections 2 and 3 of the Fair Sentencing Act had been enacted at the time they committed the covered offense. *See* First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). The effect of the First Step Act was to make the statutory penalties for covered offenses enacted under the Fair Sentencing Act retroactive — thus allowing defendants who were convicted before the enactment of the Fair Sentencing Act to take advantage of the Fair Sentencing Act of 2010's more lenient sentencing provisions. *Telcy v. United States*, 20 F.4th 735, 739 (11th Cir. 2021).

In *In re Edwards*, 98 F.4th 425 (3d. Cir. 2024),[6] for example, the Court of Appeals for the Third Circuit was faced with the question of whether a First Step Act resentencing results in a "new" judgment under *Magwood*. In that case, Terril Edwards was charged with three counts: possession with intent to distribute more than 50 grams of crack cocaine (the "Drug Trafficking Charge"), carrying a firearm during and in relation to a drug trafficking crime (the "First Firearm Charge"), and possession of a firearm by a felon (the "Second Firearm Charge"). In September 2008, a jury found Edwards guilty of each charge. *Id.* at 428.

Based on Edwards's criminal history, the District Court determined that, under 21 U.S.C. § 841, the statutory minimum for the Drug Trafficking Charge was life imprisonment. *Id.* In February 2009, the District Court sentenced Edwards to (i) the mandatory minimum of life imprisonment for the Drug Trafficking Charge, (ii) five years, to be served consecutively, for the First Firearm Charge, and (iii) 120 months, to be served concurrently, for the Second Firearm Charge, resulting in "a total term of mandatory life without release with five years consecutive." *Id.* Edwards appealed, and the Eleventh Circuit affirmed his conviction and sentence. *Id.* In 2011, Edwards filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence by a person in federal custody, which the District Court denied with prejudice in May 2012. *Id.*

In 2010, as part of its cocaine sentencing reform, Congress passed sections 2 and 3 of the Fair Sentencing Act of 2010 (the "Fair Sentencing Act"), which "reduced the statutory penalties for crack cocaine offenses to produce an 18-to-1 crack-to-powder drug quantity ratio" instead of the previous 100-to-1 crack-to-powder

---

[6] The Court in *Edwards* noted that its holding is also in line with the Supreme Court's reasoning in *Dillon v. United States*, 560 U.S. 817 (2010). There, the Supreme Court held that "a district court proceeding under § 3582(c)(2) does not impose a new sentence in the usual sense" and "the sentence-modification proceedings authorized by § 3582(c)(2) are not constitutionally compelled . . . [as] § 3582(c)(2) represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines." *Edwards*, at 436, n.8.

*Moises Ibarra-González v. Ingrid Morales, Warden, Inst. Ponce Adultos*
Report & Recommendation
Civ. No. 23-1575 (CVR)

drug ratio and "eliminated the mandatory minimum sentence for simple possession of crack cocaine." U.S. Sent'g Comm'n, Report to the Congress: Impact of the Fair Sentencing Act of 2010, at 3 (2015); *see also* Fair Sentencing Act, Pub. L. No. 111-220, §§ 2–3, 124 Stat. 2372, 2372 (2010). *Id.*

As mentioned above, in 2018, Congress passed the First Step Act. *Id.* In April 2019, Edwards filed a motion for resentencing under the First Step Act. The District Court granted the motion and resentenced Edwards to 180 months for the Drug Trafficking Charge, 60 months consecutive for the First Firearm Charge, and 60 months concurrent for the Second Firearm Charge, for a total of 240 months. In June 2019, the District Court entered an amended judgment reflecting Edwards's new sentence. *Id.*

During that same month, the U.S. Supreme Court overturned extensive circuit court precedent holding that to prove the crime of felon in possession under 18 U.S.C. §§ 922(g) and 924(a)(2), the government had to prove not only that the defendant knew he possessed a firearm, but that he also knew that he belonged to the particular class of individuals prohibited from possessing a firearm. *Rehaif v. United States*, 588 U.S. 225 (2019). In other words, the government would have to prove that a felon in possession knew he was a felon at the time he possessed a firearm.

In May 2020, Edwards filed a second § 2255 petition in light of the *Rehaif* decision. The district court transferred the second § 2255 petition to the Eleventh Circuit to determine whether the district court could consider the successive petition. *Id.* at 429.

In analyzing the issue, the Eleventh Circuit noted the Supreme Court's focus in *Magwood* on the use of "the judgment" to determine the meaning of the phrase "second or successive." *Edwards*, at 432 (quoting *Magwood*, at 331-33). (Citations omitted). In so doing, the Supreme Court looked to its prior decision in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), and pointed out that a habeas petition "'seeks invalidation (in whole or in part) of the judgment authorizing the prisoner's confinement.' If his petition results in the district court's granting the writ, 'the State may seek a new

judgment (through a new trial or a new sentencing proceeding).' " *Edwards*, at 432 ((quoting *Magwood*, 561 U.S. at 332) (quoting *Wilkinson*, 544 U.S. at 83). The Eleventh Circuit noted that the Supreme Court linked the possibility of a new judgment to the invalidation of the old one that authorized confinement. And based on this connection, the Supreme Court concluded that "the phrase 'second or successive' must be interpreted with respect to the judgment challenged." *Magwood*, 561 U.S. at 333.

Following that rationale and "based on the text and purpose of the statute and the implications that flow from the reasoning of *Magwood*," the Eleventh Circuit held that a modified or amended judgment is a new judgment under *Magwood* <u>only if</u> the prior judgment was invalid. The court further explained that,

> If a prisoner previously challenged a judgment that is found to be invalid, then he is afforded a fresh opportunity to challenge the new judgment that fills the void left by the invalid judgment without having to make any additional showing. **But if the prisoner's previous judgment was valid, changes to that valid judgment do not result in a new judgment under *Magwood*.** This interpretation guards against any deficiencies in the new judgment, but it also guards against undermining the purpose of AEDPA. An interpretation that any change to a valid judgment, even if it must be a substantive change, allows a prisoner to circumvent the showing necessary to bring a second or successive petition would unduly expand federal courts' ability to revisit final judgments, thereby undermining AEDPA's goal of furthering the principles of finality, federalism, and comity.

*Id.* at 433.

The court in *Edwards* continued its analysis by comparing decisions from other circuits to see whether different types of changes to a judgment create a new judgment for *Magwood* purposes. For example, in *Telcy v. United States*, 20 F.4th 735, 737–38 (11th Cir. 2021), the Eleventh Circuit held that "a sentence reduction under the First Step Act does not constitute a new judgment" because it "does not affect the validity or lawfulness of the underlying sentence. The First Step Act allows,

as a matter of legislative grace, district courts to exercise their discretion to issue sentence reductions." *Edwards*, at 433 (quoting *Telcy*, at 738).

In the same vein, the Ninth Circuit held that computation of a sentence does not result in a new judgment because "[t]o create a new judgment, a change to a sentence must be accompanied by the legal invalidation of the prior judgment. The essential criterion is legal invalidation of the prior judgment, not the imposition of a new sentence." *Edwards*, at 433 (quoting *United States v. Buenrostro*, 895 F.3d 1160, 1165 (9th Cir. 2018) (collecting cases)).

Likewise, the *Edwards* Court stated,

> the Second and Eighth Circuits have held that fixing a clerical or typographical error does not result in a new judgment, *Marmolejos v. United States*, 789 F.3d 66, 67 (2d Cir. 2015); *United States v. Brown*, 915 F.3d 1200, 1202 (8th Cir. 2019). And several circuits have held that a proceeding under 18 U.S.C. § 3582(c)(2) does not result in a new judgment, *e.g.*, *United States v. Jones*, 796 F.3d 483, 485–87 (5th Cir. 2015); *Sherrod v. United States*, 858 F.3d 1240, 1242 (9th Cir. 2017); *Armstrong v. United States*, 986 F.3d 1345, 1347 (11th Cir. 2021), because a § 3582(c)(2) resentencing has no effect on the validity or finality of the judgment imposing the sentence being reduced.

> Each of these cases arose under different circumstances— a First Step Act sentence reduction, a computation of sentence, a fix of a clerical error, and a resentencing based on the Sentencing Commission subsequently lowering the applicable sentencing range. But they all have one uniting factor: In each case where a court held that the second-in-time petition was second or successive, the prior judgment was not legally invalid.

*Id.* at 434. *See also United States v. Jones*, 796 F.3d 483, 484 (5th Cir. 2015) ("a § 3582(c)(2) sentence reduction does not result in a new judgment, but rather only in the modification of an existing one, and a petitioner may not thereby avoid the requirements for filing 'second or successive' habeas applications"); *White v. United States*, 745 F.3d 834, 836–37 (7th Cir. 2014) (holding that "Magwood does not reset the clock or the count, for purposes of § 2244 and § 2255, when a prisoner's

sentence is reduced" under § 3582(c), and noting the "substantial differences between resentencing and sentence reduction").

As discussed above, the line dividing the parties' positions in this case is narrowly drawn. Petitioner argues that any modification, however minor, constitutes a new judgment for purposes of AEDPA, thereby rendering Petitioner's Second § 2254 petition a "first" petition. Respondents, on the other hand, submit that a new judgment arises only where the underlying judgment is invalidated, in which case Petitioner's second petition would be deemed "second or successive."

For the reasons discussed below, the Court finds the *Edwards* line of authority more persuasive and more relevant to the current facts, and though the First Circuit has not directly addressed this issue, the Court finds that the *Edwards* invalidation approach is more consistent with well-established First Circuit precedent recognizing a distinction between sentence-reduction orders and sentencing orders. *See United States v. Rivera-Rodríguez*, 75 F.4th 1, 17 (1st Cir. 2023)[7] (quoting *United States v. McAndrews*, 12 F.3d 273, 277–78 (1st Cir. 1993)) ("an order resolving a Rule 35(b) motion [for substantial assistance] . . . is not, properly speaking, a sentence").

With that framework in mind, the Court turns now to the question at hand: Whether Mr. Ibarra-González received a new judgment when the Puerto Rico Court of First Instance resentenced him under the determinate sentencing system from life in prison to 99 years while at the same time being a habitual offender.

---

[7] In *Rivera-Rodríguez*, the First Circuit stated as follows:

> As an initial matter and as the government's brief points out, Rivera's jurisdictional arguments misinterpret the nature of compassionate release. What they incorrectly take for granted is the notion that his "sentence-reduction order" (as he describes it) should be treated like a traditional sentencing order. Yet quite the opposite is true—our analogous precedent has repeatedly distinguished the two and instead concluded that a sentence reduction order is in fact "a horse of a different hue." *United States v. McAndrews*, 12 F.3d 273, 277 (1st Cir. 1993).

*Id.* at 15.

*Moises Ibarra-González v. Ingrid Morales, Warden, Inst. Ponce Adultos*
Report & Recommendation
Civ. No. 23-1575 (CVR)

On June 3, 2015, the Secretary of Corrections and Rehabilitation signed a new version of the Internal Bonus Regulations. The new version contained some fundamental changes including the fact that any inmate sentenced to serve a sentence of 99 years for murder in the first degree would be entitled to an additional bonus for study and work in accordance with Reorganization Plan No. 2 of November 21, 2011. Inmates who serve their sentence in natural time will also be entitled to a bonus for study and work. Although the Petitioner had been convicted of Second Degree Murder, the Department of Corrections had no objection, given the then state of the law, for the Petitioner to receive the applicable bonus for study and work. The problem was, however, that because he was originally sentenced under the *indeterminate* sentencing system and because he was given life in prison, it was impossible for Corrections to credit any bonus time against an indeterminate sentence of life in prison. Therefore, with the agreement of the Puerto Rico Department of Corrections, the Puerto Rico Court of Appeals remanded the Petitioner's case back to the Court of First Instance with instructions to resentence him "in accordance with the determinate sentencing system implemented under Act No. 100 enacted on July 4, 1974."

Under Puerto Rico law, the determinate sentencing system derives from the Determinate Sentences Act, Law No. 100 of June 4, 1980, P.R. Laws Ann. tit. 34 § 1044, and was intended to give sentences "a greater degree of certainty so that they function as a deterrent factor for future criminal conduct by potential criminals and lead to uniformity in the way in which each crime is punished in accordance with its seriousness." *United States v. Márquez-Pérez*, 44 F. Supp. 3d 175, 190 (D.P.R. 2014) (citing *Pueblo v. Santa Vélez*, 177 D.P.R. 61, 74, 2009 WL 3488357, 2009 TSPR 158 (2009) (certified translation in English). "The old system of indeterminate sentences led to disparity, since different judges applied inconsistent penalties for similar facts, and therefore the administration of justice had intolerable variations from one judge to another." *Márquez-Pérez*, 44 F. Supp. 3d at 190. Therefore, the Act "came to

address such an anomaly, establishing fixed penalties for each one of the felonies, thereby limiting the discretion of the lower court judges." *Id.* (emphasis added).

According to Article 58 of the 1974 Criminal Code,

> When the court sentences to a prison term, the sentence shall be precise, with a specific duration. *In felony cases, the fixed term established by law for the crime shall be imposed*. Should there be any aggravating or mitigating circumstances, the fixed penalty must be increased or decreased within the limits established by law for the crime. In these cases, the prison term to be imposed will also be fixed. (Emphasis added.) Art. 58 of the 1974 Criminal Code

(33 L.P.R.A. sec. 3282). (Emphasis added).

On April 7, 2016, consistent with the Court of Appeals' decision, the trial court resentenced Mr. Ibarra-González under the determinate sentencing system.[8] His life sentence without the possibility of parole for Second-Degree Murder was converted to a fixed term of 99 years incarceration.[9] His sentences corresponding to the two Weapons Act counts were left undisturbed.

By all accounts, the record before the Court suggests that the resentencing of Mr. Ibarra-González on April 7, 2016, was nothing more than a ministerial task[10] carried out by the Court of First Instance, according to the instructions of the Court of Appeals—to convert his indeterminate "life" sentence to a determinate sentence so that Corrections could make the appropriate bonus adjustments to his sentence for study and work, if any. There is no indication that the Court of First Instance conducted a full resentencing hearing nor that the defendant even appeared at the

---

[8] Defendant was resentenced under the determinate sentencing system on April 7, 2016.

[9] *See Pueblo v. Ibarra González*, No. IVI2002G0053, 2016 WL 7033749, at *1 (P.R. Cir. Oct. 24, 2016).

[10] In law, a ministerial task (or act) is a routine administrative duty performed by a public official that requires no personal judgment, discretion, or interpretation of the law, but rather follows a specific legal or authoritative instruction or a predetermined procedure. These tasks are characterized by their prescribed manner of execution, where the official simply applies the law or policy to a given set of facts without making a choice or using their own judgment. *See* https://dictionary.justia.com/ministerial-act.

*Moises Ibarra-González v. Ingrid Morales, Warden, Inst. Ponce Adultos*
Report & Recommendation
Civ. No. 23-1575 (CVR)

resentencing hearing, if there was one.[11] Furthermore, there is no evidence in the record to indicate that the sentencing judge exercised any discretion nor that any aggravating or mitigating evidence was reviewed afresh.

In a habeas corpus petition, the applicant has the burden of proving primary facts, not inferences, that he has been denied due process of law in state court. *Coggins v. O'Brien*, 188 F.2d 130 (1st Cir.1951).[12] *See also Farrell v. Lanagan*, 166 F.2d 845 (1st Cir.1948) (the party seeking a writ of habeas corpus on the ground that his state court conviction was void, because he had been deprived due process of law in violation of the Fourteenth Amendment, has the burden of establishing denial of his due process rights). Here the Cout cannot say that Petitioner has met that burden. Indeed, the Court cannot identify a shred of evidence in the record to explain why the resentencing hearing should not be considered a sentence modification hearing that was totally unrelated to the original judgment. For that reason, the Court finds that the 2016 Judgment is not a new intervening judgment that serves to reset the habeas clock. The Court therefore finds that it is without jurisdiction to hear this matter and recommends that the Court **GRANT** Respondent's Motion to

---

[11] *See* Rule 192.1 of the Puerto Rico Rules of Criminal Procedure, which establishes a mechanism for any person confined in a penal institution to collaterally attack the validity or constitutionality of the final judgment by virtue of which he or she is serving a prison sentence. Rule 192.1 specifically provides that the court shall consider and decide any such motion *without the presence of the petitioner at the hearing,* unless a question of fact is raised which requires his presence. (Emphasis added).

[12] When a defendant moves to dismiss for lack of federal subject matter jurisdiction, "'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) ((quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (quoting *Taber Partners, I. v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993))). The First Circuit has held that the party advocating jurisdiction must make clear the grounds on which the court may exercise jurisdiction: "it is black-letter law that jurisdiction must be apparent from the face of the plaintiffs' pleading." *Johansen*, at 68 (quoting *PCS 2000 LP v. Romulus Telecomms., Inc.*, 148 F.3d 32, 35 (1st Cir. 1998)). If the party fails to demonstrate a basis for jurisdiction, the district court must grant the motion to dismiss. Though the Court takes as true the well-pleaded facts of the complaint, in this case the Amended Petition, id. (citing *Santa–Rosa v. Combo Records*, 471 F.3d 224, 226 (1st Cir. 2006)), a plaintiff cannot rest a jurisdictional basis "merely on 'unsupported conclusions or interpretations of law.'" *Id.* (quoting *Murphy, 45 F.3d at 522* (quoting *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir. 1993)).

Dismiss because the Amended Petition constitutes a "second or successive" petition, which can only be decided by the Court of Appeals.

### C. Timeliness of the Second §2254 Petition

Effective April 24, 1996, Congress enacted a statute of limitations applicable to federal habeas corpus petitions filed by state prisoners as part of AEDPA. 28 U.S.C. § 2244(d). That statute sets a one-year limitations period which runs from the time that the state court judgment of conviction becomes "final by the conclusion of direct review or the expiration of the time for seeking direct review." 28 U.S.C. § 2244(d)(1)(A). Judgments are considered "final" for AEDPA purposes "when the ninety-day period for seeking certiorari expire[s]." *Neverson v. Farquharson*, 366 F.3d 32, 36 (1st Cir. 2004).

AEDPA, however, provides exceptions to the one-year limitations period where an untimely filing was caused by the state, where new constitutional rights have been created by the Supreme Court, or where there is newly discovered evidence. 28 U.S.C. § 2244(d)(1)(B)-(D). AEDPA also excludes from the one-year limitations period the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(1)(A). In addition, equitable tolling of the AEDPA's limitations period may be available when "extraordinary circumstances" beyond the petitioner's control prevented the prompt filing of the petition. *Cordle v. Guarino*, 428 F.3d 46, 48 (1st Cir. 2005).

In this case, Mr. Ibarra-González filed his First § 2254 Petition on May 12, 2008. That petition was assigned Civ. No. 08-1542 (DRD) and challenged Mr. Ibarra-González's February 3, 2003 judgment and sentence.

On September 22, 2012, this Court issued an Opinion and Order wherein it held that Mr. Ibarra-González's petition under 28 U.S.C. § 2254 was untimely filed. The Court, therefore, dismissed Mr. Ibarra-González's petition *with prejudice*. Based on the Court's review of the docket in Civ. No. 08-1542 (DRD), it appears that Mr. Ibarra-González appealed that dismissal to the Court of Appeals for the First

Circuit. On January 24, 2013, in a one-sentence opinion, the Court denied Mr. Ibarra-González's request for a certificate of appealability and terminated his appeal. The Court of Appeals for the First Circuit then issued a Mandate on February 19, 2013. The deadline for filing a subsequent habeas petition, therefore, would be some 90 days (assuming certiorari was not granted by the Supreme Court and there is no indication in the record that it was) from February 19, 2013, which would be approximately May 20, 2013.

It was not until some 10 years later, on November 15, 2023, that Mr. Ibarra-González filed his Second §2254 Petition. The Petitioner argues that because the 2016 Judgment is a new judgment, the Amended Petition was filed "well within the limitations period applicable to the 2016 Judgment." *See* Docket No. 47 at 9. Though the Petitioner does not explain using dates and references to the docket why he believes the Second § 2254 Petition was filed "well within" the limitations period applicable to the 2016 Judgment, it is clear enough to say that the Court has already found that the 2016 Judgment is not, in fact, a new judgment and therefore did not restart the habeas clock. *See Robles v. O'Brien*, 465 F. Supp. 2d 84, 86 (D. Mass. 2006 ("While the limitations period is tolled during the pendency of properly filed post-conviction state court litigation, the AEDPA clock is not reset or restarted when the limitations period has already expired.") (citing *Cordle v. Guarino*, 428 F.3d 46, 48, n.4 (1st Cir. 2005); s*ee also Martinko v. New Hampshire State Prison for Men*, 2020 WL 6875752 (D.N.H. Nov. 9, 2020), report and recommendation approved *sub nom*. *Martinko v. NH State Prison for Men, Warden*, 2020 WL 6875103 (D.N.H. Nov. 23, 2020).[13] As such, the Court finds that without the benefit of an intervening judgment, the Second § 2254 Petition is untimely.

---

[13] *Martinko v. New Hampshire State Prison for Men*, supra, Petitioner Martinko contended that the October 2018 amendment to the terms of his sentence resulted in a new judgment against him, creating a new one-year limitations period for seeking habeas relief. The U.S. District Court for the District of New Hampshire reasoned that "[t]his argument lacks merit as the October 2018 amendment did not sufficiently change the original judgment against Martinko to create a new limitations period for Martinko to file habeas claims." *Martinko*, at *10.

In sum, the Court finds that based on the Court's discussion above, the 2016 Judgment is not a new intervening judgment and therefore it cannot restart the habeas clock. Mr. Ibarra-González's Amended Petition was therefore not timely filed. Accordingly, the Court **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED** as it relates to the statute of limitations.

### III.    <u>CONCLUSION</u>

In conclusion, based on the foregoing, I **RECOMMEND** that the Court **GRANT** the Respondent's Motion to Dismiss at Docket No. 43 in its entirety and **DISMISS** the Petitioner's *Amended Petition at Docket No. 31* for lack of jurisdiction and for being untimely. *See Eccleston v. Spaulding*, 546 F. Supp. 3d 82, 88 (D. Mass. 2021) ("In determining whether to transfer or dismiss the petition, the Court should consider whether the transferee court has already addressed the allegations raised in the current petition.").

The parties have **TEN (10) DAYS** to file any objections to this Report and Recommendation. Failure to file the same within the specified time waives the right to appeal this Report and Recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia Copete*, 792 F.2d 4 (1st Cir. 1986).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this <u>**5th**</u> day of September 2025.

<u>s/ *Marshal D. Morgan*</u>
 MARSHAL D. MORGAN
 UNITED STATES MAGISTRATE JUDGE
